SNOW v. SHREFFLER.

(Supreme Court, Appellate Division, Fourth Department. December 29, 1911.)

1. CONTEMPT (§ 82*)—PUNISHMENT—DISCHARGE FROM IMPRISONMENT—HEARING IN CHAMBERS.

Under Judiciary Act (Consol. Laws 1909, c. 30) § 148, which provides that a Special Term of the Supreme Court may be adjourned to a future day and to the chambers of any justice residing within the judicial district, the justice at Special Term, after adjournment of term, is authorized to hear an application for the release of one imprisoned for contempt at his chambers at another place in the district.

[Ed. Note.—For other cases, see Contempt, Dec. Dig. § 82.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

2. CONTEMPT (§ 60*)—CIVIL CONTEMPT PROCEEDINGS—SUFFICIENCY OF EVIDENCE.

Evidence to sustain the action of a justice at Special Term in imposing a fine upon an attorney for civil contempt under Code Civ. Proc. § 14, which under Penal Law (Consol. Laws, c. 40) § 273, subd. 1, makes him guilty of a misdemeanor if the charge be true, should be clear, and establish his guilt with reasonable certainty.

[Ed. Note.—For other cases, see Contempt, Dec. Dig. § 60.*]

3. CONTEMPT (§ 75*)—PUNISHMENT—FINE OR INDEMNITY TO PARTY INJURED—AMOUNT.

An insolvent debtor, not shown to possess any property out of which plaintiff could have collected a judgment, and against whom a preliminary adjudication in bankruptcy had been made, was committed to jail for violating an order made on proceedings supplementary to execution, prohibiting the transfer of any of his property, and was in February, 1911, or soon thereafter, entitled as a matter of right to his release under Judiciary Law (Consol. Laws 1909, c. 30) § 774, relating to the length of imprisonment for contempt. A fine equal to the amount of the judgment and costs was imposed upon the debtor's attorney who technically disobeyed the direction of the court to inform the plaintiff's counsel of an adjournment of a hearing on application for defendant's release, and on February 25, 1911, secured an ex parte order releasing the debtor who afterwards left the state. *Held*, that the fine was excessive.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 258–260; Dec. Dig. § 75.*]

4. CONTEMPT (§ 74*)—INDEMNITY OR FINE—EVIDENCE.

Before a fine can be imposed in civil contempt proceedings against an attorney to reimburse a party for his loss from the attorney's misconduct, proof must be given of the damage which the injured party has suffered by the attorney's willful violation of the order or judgment which constitutes his offense, and, before costs can be imposed on the attorney, must be proved that they have been incurred.

[Ed. Note.—For other cases, see Contempt, Dec. Dig. § 74.*]

Kruse and Robson, JJ., dissenting.

Appeal from Special Term, Yates County.

Action by Sarah L. Snow against Charles E. Shreffler. In the matter of the application to punish James O. Sebring for contempt of court, etc., in said action. From an order of Special Term entered in the Yates county clerk's office adjudging Sebring guilty of contempt, and imposing upon him a fine of $1,168.72, and directing the sheriff to commit him to the county jail until payment of the fine or discharge according to law, Sebring appeals. Reversed.

See, also, 140 App. Div. 915, 124 N. Y. Supp. 1130.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Charles Marvin, for appellant.
M. A. Leary, for respondent.

SPRING, J. At the outset and before presenting the facts contained in the record, and in order the better to comprehend their application, I will state the questions of fact involved and of what Sebring is adjudged guilty of contempt.

There were two questions of fact litigated before Judge Sutherland: First. Whether Sebring knew of the stipulation given by Gridley, the

attorney for the defendant, about the 15th day of February of the
present year. Second. Whether he violated the direction of Justice
Clark made February 18th of the present year to notify Mr. Leary,
the attorney for the plaintiff, of the adjournment of the proceeding
then pending to February 25th. The judge at Special Term has ac-
quitted Sebring of any knowledge of the stipulation referred to on the
ground that the evidence was insufficient to sustain a finding that he
possessed such knowledge, so that charge is now eliminated. He, how-
ever, finds him guilty of contempt, in that he failed to obey the direc-
tion of Justice Clark to inform Leary of the adjournment referred to,
and that he obtained the order on February 25th in willful violation of
his promise to notify Leary of the postponement, and without inform-
ing Justice Clark of such omission. The order, among other determina-
tions, adjudges:

"That it was the duty of said Sebring to notify said Leary in accordance
with the direction of the court and his promise; and, when he had failed to
give said notice, it was his duty as an attorney and counsel of this court to
inform the court of that failure; and in his application for the order and
obtaining the same without notifying the court that he had failed to carry
out his promise was calculated to and did deceive the court, and was a will-
ful violation of the duty of Sebring as an officer of this court and as an at-
torney and counselor thereof."

Later on the order proceeds:

"And it is further ordered and adjudged that the said order of February
25, 1911, was obtained by the said James O. Sebring through a willful and
deliberate violation of duty on his part in his capacity as an attorney and
officer of the court. And it is further ordered and adjudged that by reason
of all the foregoing facts and conclusions James O. Sebring is guilty of a
civil contempt of court for fraud and imposition upon the court, and for a
willful neglect and violation of his duty as attorney and counsel of this
court."

And Sebring is fined the amount of the fine imposed upon the de-
fendant when he was imprisoned, with interest from the date of the
incarceration; and the sheriff is further directed to commit him to the
county jail to be confined until the fine is paid, or until he is other-
wise discharged according to law.

On April 10, 1910, a judgment was recovered in this action against
the defendant for $1,000. An execution was issued and returned whol-
ly unsatisfied, and proceedings supplementary to execution were insti-
tuted, the order containing the usual clause prohibiting the defendant
from transferring his property, etc. An order was granted by the
county judge of Yates county adjudging the defendant guilty of con-
tempt of court in violating the injunction order, in that he had paid
some debts and disposed of some of his property in disobedience to the
injunction order mentioned, and directed that he be committed to the
Yates county jail until the fine of $1,100 be paid, and which was the
amount of the judgment with $100 costs with which he was charged.
The defendant was imprisoned in the jail on the 10th of June, 1910.
The order of the county judge was affirmed by this court (140 App.
Div. 915, 124 N. Y. Supp. 1130). Three applications for the discharge
of the defendant were made—two at Special Term, and one before the

county judge of Yates county—each of which was denied, the last one January 7, 1911, by the Special Term. On the 13th of February of the present year an order to show cause was granted why the defendant should not be discharged, returnable February 18th at the Special Term at Bath, in the county of Steuben. One of the grounds for the renewal of this motion was that more than six months had elapsed since the imprisonment of the defendant, which may be a tenable ground. See section 774, Judiciary Law.

Abraham Gridley, of Penn Yan, was the attorney for the defendant in all these proceedings, but Mr. Sebring, of Corning, was the counsel, and had actual charge of them, arguing each motion. On the 15th of February Mr. Leary, who was the attorney for the plaintiff and who had opposed successfully the preceding applications for a discharge of the defendant, applied to Mr. Gridley at Penn Yan for a postponement for two weeks of the hearing to be had in pursuance of the order to show cause, on the ground that his wife was very ill, requiring his constant personal attention. Mr. Gridley was somewhat reluctant to grant this motion. Mrs. Shreffler, who lived in Penn Yan, was very insistent that there should be no delay in this proceeding. Her husband was in jail. They had a son who was in the high school, and, naturally, she felt very acutely the fact that her husband had been so long imprisoned. Gridley, therefore, stated to Mr. Leary that he did not wish to grant the application without conferring with Mr. Sebring. Mr. Leary left the office of Gridley and the latter communicated with Mr. Sebring by telephone, and Mr. Sebring stated that he would consent to a postponement of one week, but no longer, to which Mr. Gridley assented. Mr. Leary returned in the afternoon and claimed he had a right to this stipulation for the adjournment, and Mr. Gridley very reluctantly signed a stipulation postponing the hearing of the motion until March 4th at Corning and without prejudice.

Mr. Sebring testified that he knew nothing of this stipulation, that he heard nothing further from Mr. Gridley after their conversation over the telephone, and that he assumed if any adjournment whatever was granted it would be only for one week, as he had explicitly stated to Mr. Gridley. Mr. Gridley makes two or three affidavits and testified on this subject, but in the final analysis his testimony is that he is positive that he wrote a letter to Mr. Sebring advising him of the stipulation which he had given, but he is not positive that he ever mailed it. Another letter which he had written to Mr. Sebring he found on his desk unmailed, and the evidence is that he was often negligent and forgetful, and that he owned a farm outside of the village which required his attention; and he was further distressed by the sickness of a daughter. His testimony and his letters are very unsatisfactory. Sebring testified that on the 18th of March, after the denial of the application for the discharge of the defendant, he called Gridley on the phone, informing him that Leary had claimed at the Special Term that Gridley had signed a stipulation postponing the hearing for two weeks, and Gridley corroborates this testimony. Two days later, in a letter to Sebring, Gridley writes:

"Now did I advise you of the terms of that stipulation? I have no memorandum of it if I did. You know whether I talked such an agreement over the phone, or if I wrote you to that effect."

And, referring to his uncertain opinion that he had written to Sebring, adds: "But that is only a hazy suggestion in my own memory. I don't know."

Upon this, with other, evidence Judge Sutherland was convinced that Mr. Sebring did not know of the stipulation mentioned. He makes no specific finding upon the subject, but the order in its recitals of the reasons for the imposition of the fine does not include knowledge of this stipulation or a violation of it; and in his opinion, as already suggested, he concludes that the evidence would not warrant a finding of knowledge on the part of the appellant. On the 18th of February Mr. Sebring appeared before Justice Clark at Special Term in pursuance of the order to show cause, and stated, in substance, that Mr. Leary had illness in his family, and that the hearing should be adjourned for one week at Wayland. The direction, which is the foundation of this order adjudging Mr. Sebring guilty of contempt, was made at this time by Justice Clark, and, in order that we may understand precisely what the justice had in mind, I will quote from his affidavit on this proceeding:

"That said Sebring stated that he had understood that the plaintiff's attorney Mr. Leary of Penn Yan, N. Y., would not be present that day owing to some illness in his family, and that he, Sebring, did not want to take any advantage of Mr. Leary's absence, and therefore asked the court to adjourn said motion to the court's chambers at Wayland, Steuben county, N. Y., one week—to the 25th day of February, 1911. That deponent thereupon, in open court, stated to Mr. Sebring that the Wayland Special Term was not a regularly appointed Special Term, but merely an adjourned Special Term, and that, if the matter was adjourned, he, Sebring, must notify Mr. Leary of said adjournment, he not being present at Bath to consent to it, and said Sebring in open court agreed to notify Mr. Leary of said adjournment."

[1] It will be observed, therefore, that the reason for the direction to notify Mr. Leary was that the Special Term at Wayland was an adjourned term, and the justice presiding had some doubt as to the power of the court at that term to hear the application on the order to show cause, unless there was a voluntary appearance or consent for the hearing at that time by both parties. It seems that the term at Wayland was a regular adjourned term held at the chambers of the justice presiding. As is well said by Justice Sutherland in his opinion, section 148 of the judiciary law gives ample authority for the hearing at the adjourned term at the chambers in Wayland. Sebring did not notify Mr. Leary directly of this adjournment, and it is for his failure to do this that he has been adjudged guilty of a willful violation of the direction of Justice Clark. One of his excuses is that he notified Mr. Gridley, although his evidence is not very explicit on that subject. He testified as follows:

"My recollection is that I immediately, within a day or two thereafter, talked with Mr. Gridley over the telephone, and told him of that fact that I had appeared at Bath and had the motion postponed. I have been giving the matter a great deal of thought since this came up. I am not clear, and I wish to be fair to Mr. Gridley, as well as everybody else, in this matter.

I am not clear that I told Mr. Gridley the date to which it was adjourned. Q. Did you tell Mr. Gridley to inform Mr. Leary of the fact of the postponement? A. I am very positive I did."

Gridley, in effect, finally denies that he received any information from Mr. Sebring of this adjournment.

In construing the effect of this direction and in justification of Sebring's conduct, we must bear in mind that he believed that, if Gridley had consented to a postponement of the hearing, it was only for one week, so if that were true Mr. Leary knew that the hearing would be had on the week following. In any event, if he had no knowledge of the stipulation, as the court below in effect has found, and was relying upon his interview with Gridley, this technical violation of the direction of Justice Clark does not seem to me to be sufficient to authorize so drastic an order as was granted against him in this case.

On the 25th of February Sebring had prepared an order discharging the defendant on failure of the plaintiff to appear and started for Wayland with the papers and for the purpose of presenting his application. As he entered the car, he found a young lawyer from Corning who was also going to Wayland to court, and Mr. Sebring asked him to hand these papers to Judge Clark and obtain the order. The young lawyer testified that Sebring told him that probably no one would appear in opposition to this motion. The essence of Sebring's testimony is that he did not expect the motion would be argued, as he knew that Mr. Leary's wife was ill, but he expected some one would apply on his behalf for an adjournment, which, he was satisfied, would be granted; but he took the precaution to prepare the order in the form which I have stated, so that it might be granted in case there was no appearance. The order was granted by Justice Clark, and he wrote Mr. Sebring a letter returning it with the order by the young lawyer to be delivered to Mr. Sebring, which was done.

Much is made of this letter, which calls attention, first, to the fact that the notice of motion should have been served eight days before it was returnable. Judge Clark is in error about this, because Mr. Gridley, the attorney who served the motion papers, or caused them to be served, lived in the same village with Mr. Leary, so that the service was seasonable. Judge Clark evidently was of the impression that Sebring was the attorney of record as his name appeared on the papers as counsel. Judge Clark again refers to his power to grant an order based on a contested motion at his chambers at Wayland. Now there is nothing in this letter which calls attention to the question of notice to Mr. Leary, so, it seems to me, undue importance has been assigned to this communication in view of the gravity of the charge which has been sustained against Mr. Sebring. Mr. Sebring mailed the order to Mrs. Shreffler, the wife of the defendant, and by her it was given to the sheriff, and her husband was promptly released. Mr. Sebring is criticised, and properly, for sending this order to the wife of the defendant, and not sending a copy to Mr. Leary or Mr. Gridley. He testified, however, that Mrs. Shreffler had been insistent that all orders to be served in the action or

proceeding should be sent to her, because, as she claimed, her at-
torney had been careless, and it seems that previous papers had been
served by her, and on that account he mailed this order to her.

There are one or two incidental matters which shed a sidelight
upon the history of this proceeding. When the matter was adjourned
on the 18th of February for one week, it was noted in the newspa-
pers. The Rochester Democrat and Chronicle has the largest cir-
culation in Penn Yan of any daily paper. In its issue of February
20th it announced in flaring headlines the hearing of this matter on
the 18th, and stated in its account of the proceeding that the matter
would be reargued at Wayland on the following Saturday. The
plaintiff's husband is a regular subscriber for this paper, receiving
it about 9 o'clock in the morning of the day of its issue, and both she
and her husband testified that they read the statement in the Dem-
ocrat and Chronicle, although they claim they did not advise Mr.
Leary of what they had read, though they saw him frequently. There
is a local paper in Penn Yan, and in its issue of February 22d it pub-
lished, under the head of "Schreffler Case Again," that the proceed-
ing was held open for a week. Mr. Leary was asked as to his knowl-
edge of this item in the Democrat and Chronicle, and testified as fol-
lows:

"I do not recall it. There might have been, but I do not remember it. Q.
Is that as strong as you will put it? A. Yes, sir. I would not pay any at-
tention to it if I saw it. I will tell you that if it will do you any good. Q.
If your attention was called to it, you would not pay any attention to it?
A. No, sir. Q. To see whether a mistake had occurred or not? A. No, sir."

Mr. Leary returned from the hospital at Rochester, where he had
taken his wife on the 27th of February, and noticed an item in the
Democrat and Chronicle that Shreffler had been discharged. After
his discharge on the 25th day of February, the defendant remained
in the village of Penn Yan until the 19th day of March following.
He was on the street, apparently not attempting to conceal himself,
and Mr. Leary knew of his presence and saw him from day to day,
and during that period he did not make any attempt to get away, so
far as the record shows. Mr. Leary, of course, was angry when he
learned that the defendant had been discharged, and that his stipula-
tion with Mr. Gridley, and upon which he had a right to rely, had
been disregarded, and that the application had been made in spite
of it. The Special Term of March 4th, which would be the adjourned
day in pursuance of the stipulation, was adjourned until the 18th of
March. On that day Mr. Leary appeared and showed to Judge Clark
the stipulation he had made with Mr. Gridley, and advised the jus-
tice that Mr. Sebring knew of the stipulation when he obtained the
order of the 25th of February. Thereupon Justice Clark, without any
notice, granted an order for the rearrest of the defendant, and also
for the denial of the motion for his discharge. At the same time he
granted an order directing that Mr. Gridley be examined before a
referee that he named in the order concerning the stipulation. Very
naturally Justice Clark was quite indignant, and believed that he had
been tricked or imposed upon by Mr. Sebring, and his position would

be invulnerable if, as he supposed, Mr. Sebring had knowledge of the stipulation which had been made by Mr. Gridley, the attorney in the action, postponing the hearing of the application for two weeks. The 18th of March was on Saturday, and Mr. Leary did not reach Penn Yan until after 7 o'clock that evening and the clerk's office was closed, so that his order could not be entered and the commitment for the rearrest of the defendant issued to the sheriff until the following Monday. On Sunday the defendant left Penn Yan, and has not been seen in that village since. He went to Corning, called up Mr. Sebring, as the latter gentleman testified, and Mr. Sebring says that he told him to go back to Penn Yan and fight the matter out. Instead of doing that, he evidently left the state.

If Mr. Sebring was perpetrating a fraud upon the court in obtaining the order on the 25th of February discharging the defendant from imprisonment, it would seem on its face to be a remarkably foolish experiment in view of what occurred and of the publicity given to his conduct. The prior applications to discharge the defendant attracted much public attention and the fraud of Sebring would be readily discovered and the rearrest of the defendant would follow. As already noted, the defendant apparently had received no word from Mr. Sebring that he should get without the jurisdiction of the courts of the state of New York. Mr. Leary at any time, as he did eventually, could have obtained an order upon his stipulation for the rearrest of the defendant and without any notice. It would seem, with all due deference to Mr. Leary, who is an able lawyer and evidently of high standing, that his bitterness toward Mr. Sebring led him astray somewhat. While he technically had a right to rely upon this stipulation made by Mr. Gridley, when he learned that the defendant had been discharged and knew that it had been done in pursuance of an order of the court at Special Term, it seems to me he might have assumed that the order had been granted through an honest mistake, and he might in some way have communicated with Mr. Sebring. His own testimony on that subject is in effect that he preferred to proceed against Sebring than against Shreffler, who was irresponsible.

[2] Mr. Sebring may be a dishonest man, but, before he is convicted of this grave charge, the evidence should be clear and convincing establishing his guilt. Section 273, Penal Law, subd. 1, makes him guilty of a misdemeanor if the charge is true; and, although the fine is imposed for a civil contempt in pursuance of section 14 of the Code of Civil Procedure, yet it is founded upon his fraud and willful misconduct, and the logical result of the affirmance of the order may be his disbarment and possibly his imprisonment. The evidence should establish his guilt with reasonable certainty at least. Ketchum v. Edwards, 153 N. Y. 534, 47 N. E. 918; Johnson v. Austin, 76 App. Div. 312, 78 N. Y. Supp. 501; In re Assignment of D. Wegman's Sons to M. Angelo Elias, 40 App. Div. 632, 57 N. Y. Supp. 987. The rule is especially applicable requiring proof almost beyond a reasonable doubt in order to justify the granting of an order of this kind, because the person charged is convicted and imprisoned without a jury trial.

It seems to me that the pith of the charge has been removed when the conclusion is reached that Sebring did not know of the stipulation which had been made, and, in fact, according to his testimony, and there is nothing to contradict it, he was not aware of it until after the order of March 18th rearresting the defendant, and directing Gridley to appear before the referee. If he did not know of that stipulation, he certainly had a right to assume that Mr. Leary knew that the proceeding was to be adjourned for one week, for that is what he directed . Gridley to do, and he had heard nothing to the contrary. While the reason for a direction which a judge makes may not justify its violation, although the reason is not based on substantial grounds, yet it would hardly seem that a lawyer should be punished for contempt and ordered to be imprisoned where the violation of the direction is merely technical. That is, Judge Clark wanted Leary to be notified because he was apprehensive that he did not possess the authority to grant the order asked for at his adjourned term, unless Leary should appear or consent to the application being heard at that time. This reason does not seem to be well founded, and Sebring was of that opinion. Assuming, as we must, that he did not notify Gridley at all ·or comply with the order in any way, it still ought not to be a very grave infraction of this direction if he had a right to rely on his own instruction to Gridley to have the proceeding postponed for one week, and believed honestly that the direction had been complied with. There was no secrecy either in the application for the postponement for one week or in the asking for, or the granting of, the order on February 25th. The proceedings were in open court in the usual public manner, with no endeavor to conceal from those present precisely what was occurring.

[3] Again, I think the amount of the fine imposed is unduly excessive. The record shows that the defendant was insolvent, and that a preliminary adjudication in bankruptcy proceedings had been made by the referee in bankruptcy in August preceding. He had already been incarcerated eight months, and, if full effect is given to section 774 of the judiciary law, already adverted to, he was entitled as matter of right to be discharged. See Hommel v. Buttling, 46 App. Div. 206, 61 N. Y. Supp. 811. Apparently there was no prospect of collecting the plaintiff's judgment from the defendant, and yet the court below has assumed, without any proof whatever to sustain the assumption, that the damage to the plaintiff by the discharge of the defendant in pursuance of the order of Judge Clark on the 25th of February was the amount of the fine imposed upon the defendant, to wit, the amount of the judgment and $100 costs included in the order against Shreffler. There is no evidence to sustain any such quantum of damages. If he had no property, the plaintiff was remediless, and the defendant, a man of family, was bound to be discharged in any event in a short time. ·

In Moffat et al. v. Herman, 116 N. Y. 131, 134, 22 N. E. 287, where the amount of the fine imposed was the amount of the judgment and costs, the court thus laid down the rule to be observed:

"It will be observed that the fine imposed was far in excess of the sum which the court had power to inflict in the absence of proof that the plaintiff had sustained damage in such amount, because of the act of the defendant

adjudged to be a contempt of court. It is well settled that, under this section of the Code, the amount of the fine to be imposed for the purpose of indemnifying the person aggrieved must be based upon proof of the damage actually sustained."

[4] The authorities are abundant that proof must be given of the damages which the injured party has suffered by the willful violation of the order or judgment which constitutes the offense before a fine can be imposed which is to reimburse such party for his loss. Sudlow v. Knox, 7 Abb. Prac. (N. S.) 411, 420; De Jonge v. Brenneman, 23 Hun, 332; Simmonds v. Simmonds, 6 Wkly. Dig. 263; Socialistic Co-Op. Pub. Ass'n v. Kuhn, 164 N. Y. 473, 58 N. E. 649. Burnham v. Denike, 53 App. Div. 407, 65 N. Y. Supp. 1028; Fall Brook Coal Co. v. Hecksher, 42 Hun, 534. The rule prevails for the reason that the amount of the fine is imposed in order to indemnify the injured party for the loss he has met with. The amount of that loss, as was said by the Court of Appeals in Sudlow v. Knox, 7 Abb. Prac. (N. S.) 421, "must be ascertained by the like evidence, to which are to be applied the same rules of law as upon the trial of an action brought for an injury. . The amount is no more discretionary in proceedings under the statute as for contempt to procure redress than in an action brought for that purpose."

In this record there is no proof that the plaintiff could have collected the judgment against the defendant. On the other hand, it appears affirmatively that he had no property, and could not further be restrained of his liberty. Even the imposition of costs cannot be made without proof that they have been incurred. People ex rel. Surety Co. v. Anthony, 7 App. Div. 132, 40 N. Y. Supp. 279, affirmed 151 N. Y. 620, 45 N. E. 1133. While the order to show cause, which is the foundation of this proceeding, was directed against Gridley, as well as Sebring, he was discharged by Justice Sutherland upon the suggestion of Mr. Leary that he believed there was no intentional wrongdoing by Gridley. Gridley, evidently not a resolute man, may have been overborne by two stronger men—Leary and Sebring. His testimony and affidavits are unsatisfactory and inconclusive. The significant thing is, however, that in none of his letters to Sebring in which he goes over the granting of the orders in this action does he make any allusion to the stipulation until in the one of March 20th referred to. It may be that Sebring perpetrated a fraud upon Justice Clark. If so, of course, he should be punished. The order is a very important one in that it involves the integrity of a lawyer; and, whatever may be the charges or rumors against him, we ought to be careful before he is convicted of an offense which is defined to be a crime, as he has been by this order.

The order should be reversed.

Order reversed, with $10 costs of this appeal, and motion denied. All concur, except KRUSE and ROBSON, JJ., who dissent.