OPINION OF THE COURT
Lewis R. Friedman, J.
Trial by jury is a fundamental right under the State and Federal Constitutions. Contempt is the fundamental right of the court to protect its process. "It has always been one of the attributes — one of the powers necessarily incident to a court of justice — that it should have this power of vindicating its dignity, of enforcing its orders, of protecting itself from insult, without the necessity of calling upon a jury to assist it in the exercise of this power.” (Eilenbecker v Plymouth County, 134 US 31, 36 [1890].) These motions raise questions of the conflict in those principles that have not been answered in the modern cases in New York.
These are four separate proceedings brought against the same respondents in which the petitioner seeks civil and criminal contempt sanctions. In each case the court had previously entered orders on consent pursuant to the Housing Maintenance Code requiring the respondents to remove violations and provide heat and hot water as mandated by law. The respondents have filed a jury demand in each case. Petitioner has moved for consolidation and to strike the jury demands.
CONSOLIDATION
Petitioner seeks consolidation of these proceedings for a *377 joint trial under CPLR 602 (a) on the ground that a single consent order and the identical parties are involved in all four cases; there are, petitioner asserts, "common questions] of law or fact”. The law is settled that consolidation is favored when the interests of judicial economy can be served without prejudice to the parties. (See, e.g., Import Alley v Mid-Island Shopping Plaza, 103 AD2d 797; Mideal Homes Corp. v L & C Concrete Work, 90 AD2d 789.)
In the cases at bar each case involves repairs and conditions at different premises. Therefore, the predominant issues in both the petitioner’s and respondents’ cases at trial will relate to the individual buildings and not to the original court order. • The proof cannot reasonably be expected to overlap. There is little likelihood of any time savings from a joint trial; the likelihood of confusion of factual and legal issues is great. Consolidation is, therefore, not warranted. (Aluminum Mill Supply Corp. v Skyview Metals, 117 AD2d 765, 767-768; JM Mechanical Corp. v Washington Fed. Sav. & Loan Assn., 80 AD2d 884, 886.) The motion to consoldiate is denied.
TRIAL BY JURY UNDER NEW YORK LAW
Although respondents assert a Federal constitutional right to a jury trial, analysis logically starts with the question, not briefed by any party, of whether a jury trial is authorized under State law. The answer to that question determines whether the Federal issue need be addressed at all. State statutes and Constitutions determine the basic parameters of rights. "As is well known, federal preservation of civil liberties is a minimum, which the states may surpass so long as there is no clash with federal law.” (Brennan, The Bill of Rights and the States: The Revival of State Constitutions as Guardians of Individual Rights, 61 NYU L Rev 535, 548; Bellacosa, A New York State Constitution Touch of Class, 59 NY St Bar J 14, 17; People v Class, 67 NY2d 431; People v P. J. Video, 68 NY2d 296.)
The general statutory right to trial by jury is CPLR 4101:
"In the following actions, the issues of fact shall be tried by a jury unless a jury trial is waived * * *
"3. any other action in which a party is entitled by the constitution or by express provision of law to a trial by jury.” Clearly, the Judiciary Law does not provide for the manner of trial of criminal (§ 750) or civil (§ 753) contempts. Prior con *378 tempt statutes also fail to describe the manner of trial. (See, e.g., NY Laws 1801, at 54 [1887 ed]; 2 Rev Stat of NY, part III, ch III, tit II, § 10, at 207 [2d ed]; 2 Rev Stat of NY, part III, ch VIII, tit XIII, § 20, at 626 [3d ed], as amended by L 1843, ch 9.) It appears that under the Code of Civil Procedure as adopted in 1880 the court was authorized to render a final order based upon the papers without a jury — "[u]pan the original affidavits, the answers [to interrogatories], and subsequent proofs, the court, judge, or referee must determine, whether the accused has committed the offense charged”. (Code Civ Pro, ch xvii, art 4, tit III, § 2280; L 1880, ch 178.) That language of the Code was continued in Judiciary Law § 769. (L 1909, ch 35, repealed by L 1977, ch 437.) The 1977 amendment merely uses the phrase "[i]f it is determined that the accused has committéd the offense charged” the court shall enter an appropriate order. (Judiciary Law § 770, as added by L 1977, ch 437.)
Since there is no statutory answer, the question turns on the State Constitution. The provision which, with minor changes, has been in all Constitutions since colonial times provides: "[T]rial by jury, in all cases in which it hath heretofore been used in the colony of New York, shall be established, and remain inviolate” (NY Const of 1777 art XLI; see, NY Const of 1821, art VII, § 2; NY Const of 1846, art I, § 2; NY Const of 1894, art I, § 2; NY Const of 1938, art I, § 2; see, Cowper Co. v Buffalo Hotel Dev. Venture, 99 AD2d 19 [4th Dept 1984]).
It is well established that in criminal cases, jury trials are only mandated by the State Constitution for crimes punishable by imprisonment in excess of one year. (Matter of Hogan v Rosenberg, 24 NY2d 207, 214-216, revd sub nom. Baldwin v New York, 399 US 66; People v Bellinger, 269 NY 265, 270-271; People ex rel. Comaford v Dutcher, 83 NY 240; People ex rel. Murray v Justices of Ct. of Special Sessions of Peace, 74 NY 406.) Even if contempts under the Judiciary Law were treated as crimes (see, People v Colombo, 31 NY2d 947) no jury is required under the State Constitution. Under State statutes no jury trial would be required since criminal contempt in the second degree is a class A misdemeanor punishable by six months in prison. (See, Penal Law § 70.15 [1] [a], [b]; § 215.50; CPL 340.40 [2]; see, People v Cruz, 129 MisC 2d 235.)
The English practice during the colonial period aids in understanding the 1777 Constitution of New York; English common law was specifically continued in New York. (NY Const of 1777 art XXXV.) English principles of equity as well *379 as the doctrines of the common law were both incorporated. (1 Kent, Commentaries on American Law, at 336 [7th ed 1851].) In England the trial of contempts without a jury was one of the earliest attributes of the Court of Chancery’s equitable powers. (1 Holdsworth, History of English Law, at 458-469 [7th ed 1956].) By the time of Statehood the English law had apparently developed to the point that all courts, both in law and equity, tried contempts, committed in their presence or by disobedience to their orders, in a summary fashion without a jury. "A power therefore in the supreme courts of justice to suppress such contempts, by an immediate attachment of the offender, results from the first principles of judicial establishments, and must be an inseparable attendant upon every superior tribunal. Accordingly we find it actually exercised, as early as the annals of our law extend.” The accused responded to interrogatories and judgment followed. (4 Blackstone, Commentaries on the Laws of England, at 280-288 [15th ed 1809, Christians’ ed];* see, Earl of Shaftsbury’s Case, 2 State Tr [Eng] 615; Crosby’s Case, 3 Wils 188, 2 Bl 754.) The New York colonial experience had accepted the concept of nonjury contempt trials as early as 1683 when the Charter of Liberties and Privileges, reprinted in 1 Lincoln, Constitutional History of New York, 1609-1822, at 95, 101, specifically exempted "Contempt of Courts of Judicature” from the first Legislature’s demands for trial by jury.
The practice of nonjury summary trials was followed in the earliest period of Statehood. Thus, in In re Yates (4 Johns 317, 371-374 [1809]) the en banc Supreme Court, in an opinion by Chief Justice Kent, upheld the decision by the Chancery Court to hold Yates in contempt after a nonjury proceeding at which it was established that he had forged the name of a solicitor to a pleading and had illegally acted as a solicitor. In the Court of Errors, Senator Platt, relying on Blackstone, held: "The right of punishing for contempts by summary conviction, is inherent in all courts of justice, and legislative assemblies; and is essential for their protection and existence * * * A *380 contempt is an offense against the court, as an organ of public justice; and the court can rightfully punish it on summary conviction” (Yates v Lansing, 9 Johns 395, 416-417 [1811]).
The more recent cases that mention the subject at all assume without citation or discussion that there was no right to a trial by jury. (See, Snow v Shreffler, 148 App Div 422, 432 [4th Dept 1911] ["the person charged is convicted and imprisoned without a jury trial”]; Egan v Lynch, 49 Jones & Sp 454 [1883]; Soprinsky v Tolman, 160 Misc 381, 382 [City Ct, Bronx County 1936].)
The general assumption that jury trials were not available for contempts at common law was reiterated by the Supreme Court in Eilenbecker v Plymouth County (134 US, supra, at 36): "If it has ever been understood that proceedings according to the common law for contempt of court have been subject to the right of trial by jury, we have been unable to find any instance of it.” (See, In re Debs, 158 US 564, 595; Ex parte Terry, 128 US 289; Ex parte Robinson, 19 Wall [86 US] 505.)
In short it is clear that neither the Constitution nor statutes of New York authorize a trial by jury for civil or criminal contempts.
THE FEDERAL CONSTITUTIONAL RIGHT TO TRIAL BY JURY
The rule is well established that contempt of court is a crime "like other crimes insofar a the right to jury trial is concerned” (Bloom v Illinois, 391 US 194, 210; see, Duncan v Louisiana, 391 US 145). The same constitutional test determines whether the offense is "petty”, for which there is no right of trial by jury, or "serious”, for which a jury is required. (Cheff v Schnackenberg, 384 US 373; Dyke v Taylor Implement Co., 391 US 216; United States v Barnett, 376 US 681; District of Columbia v Clowans, 300 US 617.) That is, the length of the potential sentence governs, not the nature of the crime itself. (Bloom v Illinois, supra, at 211.) The legislative definition of the maximum prison sentence is the objective criterion of the seriousness of the offense. (Frank v United States, 395 US 147, 148.) Thus, despite earlier cases which discussed the "seriousness” of individual offenses "our decisions have established a fixed dividing line between petty and serious offenses: those crimes carrying a sentence of more than six months are serious crimes and those carrying a sentence of six months or less are petty crimes.” (Codispoti v Pennsylvania, 418 US 506, 512.) The six-month dividing line *381 between "serious” and "petty” has been accepted by the Court of Appeals as the applicable Federal standard. (Matter of Morgenthau v Erlbaum, 59 NY2d 143, 153-154, cert denied 464 US 993.) The issue then turns on the scope of punishment available for contempt.
The maximum period of commitment for criminal contempt under Judiciary Law § 750 is "imprisonment, not exceeding thirty days, in the jail” (Judiciary Law § 751 [1]). Clearly, that does not give rise to a right to trial by jury.
The maximum punishment for the civil contempt alleged here is less clear. Traditionally, the offender may be committed for an indefinite period in order to compel compliance with the court’s order. (Judiciary Law § 772.) Such an imprisonment does not require a jury trial, since the keys to the jail are in the offender’s pocket. (See, Shillitani v United States, 384 US 364.)
Respondents here argue that they do not have any connection with the premises at issue and, therefore, they can no longer comply with the order. Judiciary Law § 774 provides that if the required act cannot be performed the offender may be imprisoned for a term not exceeding six months. (N. A. Dev. Co. v Jones, 99 AD2d 238, 240-241; King v Barnes, 113 NY 476, 480-481; People ex rel. Munsell v Court of Oyer & Terminer, 101 NY 245, 247-248.) Section 774 has come under serious criticism in both State and Federal courts for permitting long definite sentences which are " 'neither remedial nor coercive, but punitive’ ” without a finding of willfulness and without a finding of guilt beyond a reasonable doubt. (N. A. Dev. Co. v Jones, supra, at 242; Vail v Quinlan, 406 F Supp 951, 960 [US Dist Ct, SD NY], revd on other grounds sub nom. Juidice v Vail, 430 US 327.) The Appellate Division in N. A. Dev. Co. v Jones (supra, at 242) held that the "aberrant and extraordinary provision” of section 774 should be interpreted so as to bring it into conformity with the rest of the contempt statute. "[W]holly punitive sanctions for civil contempt should be exercised only very cautiously and where the necessity is clear.” (99 AD2d, supra, at 242.) The Appellate Division has cast doubt on whether any punitive imprisonment for civil contempt can be imposed in addition to a sentence for criminal contempt; it is, however, clear that civil and criminal contempt sentences for the same conduct cannot exceed a total of six months.
The Supreme Court, in Taylor v Hayes (418 US 488) decided *382 the same day as Codispoti v Pennsylvania (supra), held that the limitation of the possible sentence for contempt to six months, whether by construction of the statute or by posttrial reduction of the term imposed, precludes the invocation of the Federal constitutional right to trial by jury. In Taylor the court found no jury was required even though the sentence imposed had been 4Vi years which was modified on appeal to six months. "We remain firmly committed to the proposition that 'criminal contempt is not a crime of the sort that requires the right to jury trial regardless of the penalty involved.’ Bloom v. Illinois, supra, at 211; cf. Argersinger v. Hamlin, 407 U.S. 25, 30 (1972).” (418 US, supra, at 496.) Similarly a pretrial stipulation to limit punishment to less than six months obviates the right to a jury trial. (United States v Marthaler, 571 F2d 1104 [9th Cir 1978].)
The civil contempt sanction sought here, either alone or in conjunction with the criminal contempt sanction, does not give rise to the Federal constitutional right of trial by jury.
Respondents, relying on Codispoti v Pennsylvania (supra), argue that a jury is nonetheless required because consecutive sentences might exceed six months in the aggregate. As noted above, each case involves a maximum possible commitment for civil and criminal contempt not to exceed six months, and most likely is limited to 30 days. The four cases are to be tried separately. In Codispoti, on the other hand, a single contempt trial resulted in a series of sentences that aggregated three years, clearly in excess of the constitutional standard, and a jury trial was required. The possibility of excessive consecutive sentences after a single nonjury trial is simply not present here.
Respondents have asserted that the motion to strike the jury demands is untimely since it was made after the referral of the cases to the Jury Part. (Wright v Centurion Investigations, 109 Misc 2d 624, revd on other grounds 113 Misc 2d 150.) The facts here allow a finding that the motion is timely. Both sides originally answered "ready” for an immediate jury trial, and the matter was sent out for trial. Respondents advised the Calendar Judge that they wished to move for a change of venue. The matter was referred to this part. Respondent made its motion, which is denied herewith as moot; the instant cross motions are timely and a fair response to respondents’ motion.
The motion to strike the jury demands is granted.

 Although "Blackstone’s Commentaries are accepted as the most satisfactory exposition of the common law of England * * * [and] undoubtedly the framers of the Constitution were familiar with it” (Schick v United States, 195 US 65, 69), Blackstone was not necessarily totally correct in stating English law. Thus, it appears that the authoritative acceptance of summary contempt powers in English law was not actually accomplished until Rex v Clement (4 Barn & Ald 218, 233, 106 Eng Rep 918, 923 [KB 1821]) after Blackstone’s death.